UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SANDRA DREKE (CAVANAGH),<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No. 3:14-cv-05427-RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for March 20, 2015 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On May 11, 2011, plaintiff filed an application for application for disability insurance benefits, alleging disability as of May 17, 2010. *See* Dkt. 9, Administrative Record ("AR") 85. That application was denied upon initial administrative review on August 1, 2011, and on reconsideration on January 25, 2012. *See id.* A hearing was held before an administrative law

REPORT AND RECOMMENDATION - 1

judge ("ALJ") on September 19, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 2-52.

In a decision dated October 26, 2012, the ALJ determined plaintiff to be not disabled. *See* AR 85-97. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 24, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 102; 20 C.F.R. § 404.981. On June 4, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on August 28, 2014. *See* Dkt. 9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in failing to properly consider the opinions of Norman Staley, M.D., and Rita Flanagan, Ph.D., (2) in assessing plaintiff's residual functional capacity; and (3) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ so erred. Accordingly, the undersigned recommends that defendant's decision to deny benefits be reversed on this basis, and that this matter be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*,

REPORT AND RECOMMENDATION - 2

359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

In assessing plaintiff's RFC, the ALJ found in relevant part that:

> **. . . the claimant . . . needs a sit/stand option that would allow the claimant to sit or stand alternatively, provided that the claimant is not off-task more than 10% of the work period. . . The claimant is limited to frequent . . . fingering. The claimant's ability to use a keyboard is limited to one hour continuously, and up to 4 hours total in an 8-hour workday. The claimant is limited to simple, unskilled tasks . . . The claimant can work around co-workers throughout the day, but with only superficial interaction with co-workers.**

AR 89 (emphasis in original). In so finding, the ALJ stated Dr. Staley had opined that plaintiff could perform bilateral fine manipulation tasks "for up to one hour continuously, for a total of 4

REPORT AND RECOMMENDATION - 4

hours in an 8-hour workday." AR 94. The ALJ also stated Dr. Flanagan had opined that plaintiff could respond appropriately to routine changes in the workplace "with customary supervision," and that she could have "only occasional contact" with co-workers. AR 93.

The ALJ gave "significant weight" to the opinions of both Dr. Staley and Dr. Flanagan. AR 94. As plaintiff points out, though, the limitations the ALJ adopted fail to adequately account for those assessed by either medical source. For example, Dr. Staley did not actually opine that plaintiff could perform fine manipulation (or fingering) frequently, but merely that she could do so as the ALJ noted, for a total of four hours in eight-hour day and only one hour continuously. *See* AR 76. Defendant argues there is no conflict between the ALJ's limitation to performing fine manipulation frequently and the ability to perform keyboarding for up to four hours in an eight-hour day and one hour continuously, because "frequent" is defined as "occurring from one-third to two-thirds of the time," and "[a] reduction in fingering to one-half of the day," i.e., four hours in an eight-hour day, "falls on the spectrum of one-third to two-thirds of the day." SSR 83-10, 1983 WL 31251, at *6; Dkt. 13, p. 4.

The undersigned agrees with plaintiff, however, that because "frequent" has been defined as "one-third to two-thirds of the day," this necessarily means that when an activity is required to be performed on a frequent basis, then an individual performing it must be able to do so for up to the top end of that range, or as plaintiff notes for up to 5.33 hours in an eight-hour workday. Defendant is correct that if an individual can perform an activity for up to four hours in an eight-hour workday, he or she would be considered to be performing it on a frequent basis, given that this falls within one-third and two-thirds of an eight-hour workday. But that is not at all the same thing as finding an individual has the capability of performing the activity on a frequent basis to begin with, which clearly contemplates the possibility that the activity may have to be performed

REPORT AND RECOMMENDATION - 5

for up to a full six hours.[2] While the ALJ's limitation on keyboarding may be consistent with Dr. Staley's opinion, therefore, her determination that plaintiff is able to perform frequent fingering in general is in conflict with it.

The undersigned also finds the ALJ's RFC assessment is inconsistent with Dr. Flanagan's opinion that plaintiff "requires occasional supervision in making work related decisions" and that she "should only have occasional contact" with co-workers. AR 78. Defendant argues the ALJ's limitation to working around co-workers throughout the day, but with only superficial interaction with co-workers, is more restrictive than that assessed by Dr. Flanagan, because "it allows only superficial, indirect work with co-workers, rather than occasional interaction." Dkt. 13, p. 5. But as plaintiff points out, having superficial, indirect contact *throughout the day* is not the same as having only occasional interaction. That is, under the ALJ's RFC assessment plaintiff could be exposed to co-worker contact the whole workday – albeit at a superficial, indirect level – while in regard to Dr. Flanagan's functional assessment, plaintiff would have such contact only "from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5. In other words, the limitation Dr. Flanagan assessed is a temporal one (very little up to one-third of the day), which is entirely at odds with the temporal limitation the ALJ imposed (the *whole* day).[3]

In addition, although Dr. Flanagan opined that plaintiff requires occasional supervision in making work-related decisions "due to poor judgment" (AR 78), the ALJ included no limitation

---

[2] Indeed, as an example, SSR 83-10 expressly provides that "[s]ince frequent lifting or carrying requires being on one's feet *up to two-thirds of a workday*, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 1983 WL 31251, at *6 (emphasis in original). For the same reason, the undersigned disagrees with defendant that the ALJ's RFC assessment "is potentially *more* restrictive than Dr. Staley's opinion, as frequently can include fingering as little as one-third of the day, rather than one-half of the day." Dkt. 13, p. 4 (emphasis in original).

[3] For example, it is true that Dr. Flanagan did not specifically state whether or not plaintiff could have superficial, indirect contact with co-workers. *See* AR 78. On the other hand, it is not at all clear that Dr. Flanagan believed plaintiff would be able to have contact with co-workers for more than up to one-third of the day, even if that contact consisted of solely indirect and/or superficial contact.

REPORT AND RECOMMENDATION - 6

on supervision in her RFC assessment. Defendant argues the ALJ properly dealt with this limitation by restricting plaintiff to simple, unskilled tasks, noting further that unskilled work requires "little or no judgment to do simple duties that can be learned on the job in a short period of time." Dkt. 13, p. 6 (quoting 20 C.F.R. § 404.1568).

As with the definition of "frequent" discussed above, this definition also involves a range of measurement, from "little to no" judgment, and therefore unskilled work can still encompass work that necessitates at least some judgment, contrary to defendant's assertion that unskilled work by definition does not require the use of judgment to make work-related decisions. Further, it is unclear whether Dr. Flanagan's finding that plaintiff had "poor judgment" is more analogous to "little" judgment – indicating she would be able to perform those unskilled jobs requiring at least some judgment – or "no" judgment. Again, since unskilled work may involve the former, it also is unclear whether given Dr. Flanagan's opined limitation, plaintiff could perform the full range of unskilled work, including the jobs identified by the vocational expert discussed below. Lastly, because the ALJ did not mention Dr. Flanagan's opinion on this issue, it is unclear as well whether the ALJ considered that opinion or based her determination that plaintiff should be restricted to simple, unskilled work on it. For all of the above reasons, therefore, it cannot be said that the ALJ's RFC assessment completely and accurately describes all of plaintiff's physical and mental functional capabilities.

II.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert

REPORT AND RECOMMENDATION - 7

or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Tackett*, 180 F.3d at 1100-1101; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations that were included in the ALJ's assessment of plaintiff's RFC discussed above, except for the need for a sit/stand option. *See* AR 47. In response to that question, the vocational expert testified that an individual with those limitations would be able to perform the jobs of office helper, electrical accessories assembler and housekeeping cleaner. *See* AR 48. The ALJ posed a second hypothetical question containing the same limitations, but this time with the sit/stand option added, in response to which the vocational expert testified that the house keeping cleaner job would no longer fit, but the job of document preparer would. *See* AR 48-49. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing all four jobs. *See* AR 96-97.

Plaintiff argues, and defendant does not disagree, that the ALJ erred in finding her to be capable of performing the job of housekeeping cleaner, because the vocational expert testified that this job could not be performed with the sit/stand option. Defendant also does not disagree

REPORT AND RECOMMENDATION - 8

that the ALJ erred in finding plaintiff could perform the job of electrical accessories assembler, as that is a semi-skilled job and the ALJ limited plaintiff to unskilled work. *See* Dictionary of Occupational Titles ("DOT") 729.384-010 (requiring specific vocational preparation ("SVP") of 3); SSR 00-4p, 2000 WL 1898704, at *3 ("semi-skilled work corresponds to an SVP of 3-4"). As such, the undersigned also finds the ALJ so erred.

In addition, as discussed above, the ALJ erred in determining plaintiff to be capable of performing frequent fingering, given that Dr. Staley's opinion – to which the ALJ accorded great weight – indicated plaintiff had the ability to perform that task on less than a frequent basis. But as plaintiff points out, the office helper and document preparer jobs each require the ability to perform fingering frequently. *See* DOT 239.567-010, 1991 WL 672232; DOT 249.587-018, 1991 WL 672349. The ALJ's error thus cannot be said to be harmless, since a restriction to less than frequent fingering would seemingly preclude both jobs.[4] Accordingly, the ALJ's determination that plaintiff is capable of performing them also cannot be upheld.[5]

III.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate

---

[4] *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision").

[5] Because reversible error with respect to the ALJ's step five determination has been found on this basis in regard to these last two jobs, the undersigned finds it unnecessary to address plaintiff's further arguments concerning level of reasoning and need for a sit/stand option.

REPORT AND RECOMMENDATION - 9

award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record concerning plaintiff's mental and physical limitations, her residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. The undersigned therefore recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

REPORT AND RECOMMENDATION - 10

is directed set this matter for consideration on **March 20, 2015**, as noted in the caption.

DATED this 5th day of March, 2015.

*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11